MONTANA ELECTRIC CO., Respondent, *v.* NORTHERN VALLEY MIN. CO., Appellant.

(No. 3,575.)

(Submitted September 16, 1915.   Decided October 11, 1915.)

[153 Pac. 1017.]

*Realty—What are Fixtures—Bona Fide Purchaser—Principal and Agent—Estoppel—Contract of Hiring—Filing—Recording.*

Fixtures—Rule for Determining, What are.
    1.   Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it.

Same.
    2.   The attachment of personal property to the soil in the manner indicated by sections 4427 and 4428, Revised Codes, raises a disputable presumption that the one who made the attachment intended the thing affixed to become a part of the realty.

Same.
    3.   As a general rule, in addition to the intention of the person affixing a thing to land, the manner in which it is affixed and its adaptability to the use to which the land is applied, determine whether the thing affixed is realty or personalty; the relation of the parties to the property may, however, affect the application of the rule.

    [As to when and against whom fixtures may retain character of personal property, see note in 84 Am. St. Rep. 877.]

Same—Case at Bar—*Bona Fide* Purchaser.
    4.   Where the owner of a mining claim, before selling it, explained to the buyer that an electric hoist which, though placed upon a substantial foundation on the claim, could be removed without material injury to either claim or hoist, and had been used in mining operations under a

lease at a fixed rental per month, to be returned to the owner at the expiration of the term of hiring, did not belong to him, but had been installed at the instance of a company which had been working the claim under an option to purchase, and that he was merely holding it as security for money due him from such company, the buyer was not a *bona fide* purchaser, but one with notice, and therefore not entitled to claim the machinery as a fixture.

Principal and Agent—Corporations—Knowledge of Agent, When Imputable to Principal.
5. Knowledge acquired by one of the principal officers of a corporation which had been organized by him, relative to a matter concerning the purchase of a mining claim, was imputable to the company and deprived it of the right to claim as an innocent purchaser without notice.

[As to imputation of knowledge of bank officers to bank, where officers are personally interested, see note in 49 L. R. A. (n. s.) 764.]

Fixtures—Estoppel.
6. Under the circumstances as detailed in paragraph 4 above, the owner of the hoist was not estopped to assert a claim of ownership.

Personalty—Contract of Hiring—Filing or Recording not Necessary.
7. One who lets personal property for hire is not, under the present state of the statute, required to file or record the instrument which evidences the contract of hiring.

*Appeal from District Court, Jefferson County; J. B. Poindexter, Judge.*

Action by the Mountain Electric Company against the Northern Valley Mining Company. From a judgment in favor of plaintiff and an order denying it a new trial, defendant appeals. Affirmed.

Cause submitted on briefs of counsel.

*Mr. James A. Walsh,* for Appellant.

Under the facts, the provisions of our Code, and the decisions of the courts, the hoist in question here became an appurtenant to the property, passed under the deeds from Myhre to Mallette, and from Mallette to the appellant, and the respondent, by failing to record the lease, is estopped from asserting any claim to the hoist. In *Hobson* v. *Gorange,* 12 Eng. Rul. Cas. 208, Hobson leased an oil engine and appliances to one King, the owner of the building. The engine was set on a concrete foundation, and bolts imbedded in the concrete passed up through the engine, holding it firmly in

place. Gorange had a mortgage upon the property. Default was made in the payments on the lease, and Hobson brought action to recover the engine. The court held that the engine became a fixture. (See, also, *Arnold* v. *Goldfield Third Chance Min. Co.,* 32 Nev. 447, 109 Pac. 718; *Washburn* v. *Inter-Mountain Min. Co.,* 56 Or. 578, Ann. Cas. 1912C, 357, 109 Pac. 382; *Muir* v. *Jones,* 23 Or. 332, 19 L. R. A. 441, 31 Pac. 646.)

It is held in innumerable cases, when machinery or other articles are attached to real estate in such a manner as to become a fixture, that as against a mortgagee then holding or thereafter acquiring a mortgage, or against a lienholder or purchaser, the fixture becomes a part of the real estate, and cannot be removed. (*Great Western Mfg. Co.* v. *Bathgate,* 15 Okl. 87, 79 Pac. 903; *Wentworth* v. *S. A. Woods Machinery Co.,* 163 Mass. 28, 39 N. E. 414; *Fuller-Warren Co.* v. *Harter,* 110 Wis. 80, 84 Am. St. Rep. 867, 53 L. R. A. 603, 85 N. W. 698; *Kendall Mfg. Co.* v. *Rundle,* 78 Wis. 150, 47 N. W. 364; *Porter* v. *Pittsburg Bessemer Steel Co.,* 120 U. S. 649, 30 L. Ed. 830, 7 Sup. Ct. Rep. 741; *Conde* v. *Sweeney,* 16 Cal. App. 157, 116 Pac. 319; *Union Bank & Trust Co.* v. *Fred W. Wolf Co.,* 114 Tenn. 255, 108 Am. St. Rep. 903, 4 Ann. Cas. 1070, 86 S. W. 310.) Engine and other machinery sold, under a conditional bill of sale and attached to realty. Owner gave a mortgage upon the realty and it was foreclosed. A suit in replevin was brought for the property. Held that the title to the mortgagee was good as against the conditional bill of sale. (*Gunderson* v. *Swarthout,* 104 Wis. 186, 76 Am. St. Rep. 860, 80 N. W. 465; *Watson* v. *Alberts,* 120 Mich. 508, 79 N. W. 1048.) A steam pump sold under conditional sale, was attached to realty. A man bought the farm without notice of conditional sale. It was held as a part of the realty, and the title passed to the purchaser. (*Knowlton* v. *Johnson,* 37 Mich. 47.) A person agreed to erect a mill and furnish material. An engine was put in under a contract, the title to which was to remain in seller until paid for. The land was sold and the court held that the title to all property passed. (*Ice, Light*

*& Water Co.* v. *Lone Star Engine & Boiler Works,* 15 Tex.
Civ. 694, 41 S. W. 835; see, also, *McFadden* v. *Allen,* 134 N. Y.
489, 19 L. R. A. 446, 32 N. E. 21; *Ridgeway Stove Co.* v. *Way,*
141 Mass. 557, 6 N. E. 714; *First National Bank* v. *Adams,*
138 Ill. 483, 28 N. E. 955; *Pomeroy* v. *Bell,* 118 Cal. 635, 50
Pac. 683; *Conde* v. *Sweeney,* 16 Cal. App. 157, 116 Pac. 319;
*Horn* v. *Clark Hardware Co.,* 54 Colo. 522, 45 L. R. A. (n. s.)
100, 131 Pac. 405; *Mollie Gibson Consol. Min. & Mill. Co.* v.
*McNichols,* 51 Colo. 54, 116 Pac. 1041; *Meagher* v. *Hayes,* 152
Mass. 228, 23 Am. St. Rep. 819, 25 N. E. 105.)

*Messrs. Maury, Templeman & Davies,* for Respondent.

The three-conditioned test to be applied to determine whether
what was once clearly personalty has been changed into realty
through annexation was first enunciated, we believe, by the
supreme court of Ohio in *Teaff* v. *Hewitt,* 1 Ohio St. 511, 59
Am. Dec. 634. The case is generally conceded as leading upon
the subject of fixtures. Speaking of the third condition, the
intention, the court held that intention to make an article a
permanent accession to the realty must affirmatively and plainly
appear to change the nature and legal qualities of a chattel
into those of a fixture; and if it be a matter left in doubt and
uncertainty, the legal qualities of the article are not changed,
and it must be deemed a chattel. (See Devlin on Real Property
(3d ed.), sec. 121; *Alberson* v. *Elk Creek Min. Co.,* 39 Or.
552, 65 Pac. 978; *Henkle* v. *Dillon,* 15 Or. 610, 17 Pac. 148;
*Gasaway* v. *Thomas,* 56 Wash. 77, 20 Ann. Cas. 1337, 105 Pac.
168.) This court has never had occasion to say with precision
just what the conditions are going to make up a fixture; it has,
however, laid particular stress upon the condition of intent
in the following cases: *Eisenhauer* v. *Quinn,* 36 Mont. 368, 122
Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac 38; *Mattison*
v. *Connerly,* 46 Mont. 103, 126 Pac. 851.

Appellant's main contention is, that notwithstanding the
intention of the bailor, as expressed in the written lease, the

chattel became irrevocably lost to the bailor the moment the chattel became affixed to the optioned property, on the theory that the hoist was affixed to the soil and became a part of the realty, and is subject to the same rules of law as the soil itself. Upon like facts, viz., leases of mining machinery, the supreme court of California repudiated opposing counsel's contention in *Hendy* v. *Dinkerhoff*, 57 Cal. 3, 40 Am. Rep. 107; *Jordan* v. *Myres*, 126 Cal. 565, 58 Pac. 1061; *Western Union Tel. Co.* v. *Modesto Irr. Co.*, 149 Cal. 662, 9 Ann. Cas. 1190, 87 Pac. 190, and *Best Mfg. Co.* v. *Cohn*, 3 Cal. App. 657, 86 Pac. 829.

The absence of unity of titles or ownerships is regarded as salient in determining the question, fixture or not, by many courts, and rightly so in this case, since it may not be supposed that the bailor here ever intended any enhancement in value of Myhre's realty by the hoist attachment. (See *Fischer* v. *Johnson*, 106 Iowa, 181, 76 N. W. 658; *Adams* v. *Lee*, 31 Mich. 440; *Schellenberg* v. *Detroit Heating & Lighting Co.*, 130 Mich. 439, 97 Am. St. Rep. 489, 57 L. R. A. 632, 90 N. W. 47; Bronson on Fixtures, 272.)

The alleged innocent purchaser, placing no reliance upon the fact that the hoist was a part of the realty when making the purchase, cannot claim estoppel. (*Morsch* v. *Lessig*, 45 Colo. 168, 100 Pac. 431; *Sanford* v. *Gates, Townsend & Co.*, 21 Mont. 277, 53 Pac. 749; *Angell* v. *Hopkins*, 79 Cal. 181, 21 Pac. 729; *Kempner* v. *Thompson*, 45 Tex. Civ. 267, 100 S. W. 351, note to estoppel of owner, 25 L. R. A. (n. s.) 770.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In November, 1909, the Amazon-Montana Development Company held an option to purchase from Samuel Myhre the Silver Star quartz lode mining claim. It hired an electric hoist from the Montana Electric Company at a rental of $50 per month, and agreed to return it to the owner in Butte at the expiration of the term of hiring. The hoist was shipped to Amazon, placed upon a substantial foundation on the Silver Star claim, an en-

gine-house or shed was placed over it, and it was thereafter used in the prospecting operations carried on.  The Amazon company failed to make the payments as prescribed in the option contract, and some time in 1911 ceased its activities.  In October, 1911, Myhre sold the Silver Star claim to Mallette for the use and benefit of the Northern Valley Mining Company, which was organized about the same time.  Early in 1912, when the Montana Electric Company undertook to regain possession of the hoist, it was made aware of the mining company's claim of ownership and this action followed.  The trial of the cause resulted in favor of plaintiff, and the defendant has appealed from the judgment and from an order denying its motion for a new trial.

The question before us is: Did the hoist become a fixture and pass by deed from Myhre to Mallette, and from Mallette to the Mining Company?  Section 4424, Revised Codes, classifies all property as real or personal.  Section 4425 defines real property as consisting of land, that which is affixed to land, that which is incidental or appurtenant to land, and that which is immovable by law.  Section 4427 specifies the manner in which a thing may be affixed to land, within the meaning of section 4425; and section 4428 declares: "Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith-shops, mills and all other machinery or tools used in working or developing a mine are to be deemed affixed to the mine."  These provisions are identical with like provisions found in the Civil Code of California since 1872, and, with the exception of section 4428, were copied from the proposed draft of a Civil Code prepared for the state of New York by David Dudley Field and his collaborators.  The purpose of the Code was not to introduce new rules or definitions into the law, but rather to reduce to concise form the rules of law as they were then recognized and applied by the courts. Reference to New York and California decisions aids in determining the scope which the provisions of our Code above, were intended to have, and from those decisions we deduce the following: (1) Whether what would otherwise be personal
[1-3]

property has become a fixture by reason of its attachment to the soil, is primarily a question of intention on the part of the person attaching it; (2) .the attachment in the manner indicated in our Code sections above, raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; this presumption, however, is a disputable one; (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment, determine whether the thing attached is realty or personalty. (*Ford* v. *Cobb,* 20 N. Y. 344; *Voorhees* v. *McGinnis,* 48 N. Y. 278; *Tifft* v. *Horton,* 53 N. Y. 377, 13 Am. Rep. 537.)   The California courts have quite uniformly followed the New York decisions. (*Hendy* v. *Dinkerhoff,* 57 Cal. 3, 40 Am. Rep. 107; *Lavenson* v. *Standard Soap Co.,* 80 Cal. 245, 13 Am. St. Rep. 147, 22 Pac. 184; *Miller* v. *Waddingham,* 91 Cal. 377, 13 L. R. A. 680, 27 Pac. 750; *Jordan* v. *Myres,* 126 Cal. 565, 58 Pac. 1061.)   The same test has also been applied in Oregon (*Alberson* v. *Elk Creek Min. Co.,* 39 Or. 552, 65 Pac. 978), and in Washington (*Gasaway* v. *Thomas,* 56 Wash. 77, 20 Ann. Cas. 1337, 105 Pac. 168), and appears to be recognized generally (19 Cyc. 1033; 13 Am. & Eng. Ency. Law (2d ed.), 594).

That the mere attachment in the manner indicated by the statute will not always determine the character of the thing attached is apparent.   A cannot, by wrongfully attaching B's personal property to his (A's) realty, thereby acquire B's property, if it can be removed without destroying it. (*Eisenhauer* v. *Quinn,* 36 Mont. 368, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435, 93 Pac. 38.)   In that case we said: "The question, When does a chattel become a part of realty so that it passes as a part of such realty? is one most difficult of solution.   It depends upon such a variety of considerations that every case must necessarily depend upon its own state of facts."   In *Mattison* v. *Connerly,* 46 Mont. 103, 126 Pac. 851, we gave recognition to the element of intention in the following language: "The inten-

tion with which the fixture is attached or affixed to realty is always a pertinent inquiry in determining the status of what seems to be realty or personalty, as the case may be.'' The relation of the parties to the property may affect the application [4] of the rule stated above. The innocent purchaser or mortgagee who acquires an interest in the realty after the thing has been attached may be entitled to consideration not accorded to others. In the present instance, however, we are relieved of any difficulty which such a condition might present. Upon the evidence before it, the court was warranted in finding that Myhre, the owner of the Silver Star, did not assume to own the hoist. Before he disposed of the claim he explained to Mallette fully the conditions under which the Amazon company had been operating at the Silver Star claim; that the Amazon company had installed the machinery, and that he (Myhre) was merely holding the hoist as security for money which he deemed to be owing to him from the Amazon company. These findings are sufficient to strip the mining company of the claim that it was an innocent purchaser without notice. A *bona fide* purchaser is defined to be ''one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside, and purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive, of any adverse rights, claims, interest, or equities of others in and to the property sold.'' (*Foster* v. *Winstanley,* 39 Mont. 314, 102 Pac. 574.) ''It is a general rule that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding.'' (29 Cyc. 1114.) The facts disclosed by Myhre were sufficient [5] to put Mallette on inquiry, and the knowledge which Mallette possessed will be imputed to the Northern Valley Mining Company, which was organized by him who owned the entire capital stock until a portion was transferred to Myhre in part payment of the property purchased by Mallette to be turned

over to the mining company.  Mallette was one of the principal officers of the newly formed company, and his knowledge, under the circumstances, was the knowledge of the company.  (*State Bank* v. *Forsyth,* 41 Mont. 249, 28 L. R. A. (n. s.) 501, 108 Pac. 914; 10 Cyc. 1059; *Hoffman Steam Coal Co.* v. *Cumberland Coal & Iron Co.,* 16 Md. 456, 77 Am. Dec. 311.)  As between the original owner of the hoist and a subsequent purchaser with notice, the former was rightfully awarded the property.

The manner in which the hoist was attached to the mining claim is not of consequence (sec. 4428, above).  It could be removed without material injury to the realty and without injury to the hoist itself.  Applying to our Code sections above, the rule of construction adopted in New York and California, and the correctness of the court's conclusion cannot be questioned.  The element of intention to cause the hoist to become a part of the mining claim is altogether wanting.  The agreement between the electric company and the Amazon company is susceptible of but one construction—that it was not the intention of either that the hoist should become a part of the mining claim.  It belonged to the electric company, which was not interested in the mining claim.  It was hired by the Amazon company for temporary use, to be returned to the owner upon the expiration of the term of hiring.

Some contention is made by appellant that the electric company is estopped to assert a claim of ownership.  The finding that the defendant knew, or was chargeable with knowledge of, plaintiff's outstanding claim of ownership disposes of this [6] [7] contention.  We do not know of any statute which requires one who lets personal property for hire to file or record the instrument which evidences the contract of hiring.  The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied January 5, 1916.