SCHOOL DISTRICT No. 42, APPELLANT, *v.* PRIBYL, RESPONDENT.

(No. 6,304.)

(Submitted April 17, 1928.  Decided April 30, 1928.)

[267 Pac. 289.]

*Schools and School Districts—Destruction of School Property— Defense—Reversion of Site for Breach of Condition Subsequent in Deed—Fixtures—Judgment—Nonsuit—Waiver.*

Schools and School Districts — Land Granted for School Purposes — Abandonment—Reversion to Grantor.
  1.  Where defendant in an action for damages for wrongful destruction and removal of property of plaintiff school district had deeded a site to the district with the condition that title should

revert to him in the event the land be used for other than school purposes, on payment by him of $1 to the district, and the district at a special election chose a new school site, voting funds for the erection of a new schoolhouse on the chosen site, all movable property being removed thereto, whereupon defendant took possession, subsequently paying $1 to the district with demand for a deed of reconveyance, a finding that the district intended to change permanently the site of the schoolhouse *held* warranted; the action of the district resulted in abandonment of the site.

Same.

2.   Where land granted for school site purposes was to revert to the grantor on failure of the grantee district to longer use it for school purposes, the fact that on abandonment of the site the building thereon was not removed did not prevent reversion, failure to use the land as a school site meeting the contingency mentioned in the deed.

Same—Fixtures—Property of Grantor on Reversion.

3.   In the absence of evidence rebutting the presumption that the school building and the fence about the site became a part of the *school site*, and *in view of the clause in the deed to the district* that the property should revert to the grantor on abandonment of the site "together with all tenements, hereditaments and appurtenances thereunto belonging," *held* that the building and fence necessarily passed to defendant on reversion to him.

Same — Action for Damages for Destruction of School Property by Grantor of Site—Judgment of Dismissal—What not Fatal Defect.

4.   Judgment dismissing an action for damages against the grantor of a school site for destruction of school property was not rendered fatally defective for finding that defendant was entitled to a reconveyance for breach of condition subsequent, such a finding having been necessary to warrant dismissal, though not effective as compelling a reconveyance.

Trial—Defendant Introducing Testimony After Overruling of Motion for Nonsuit not Waiver of Motion.

5.   Where defendant, after overruling of his motion for nonsuit, introduces his testimony he assumes the risk of supplying any defects in plaintiff's proof but does not thereby waive his motion.

Same—District Court After Denial of Motion may Reverse Ruling After Hearing Defendant's Proof.

6.   The district court may, after erroneously overruling defendant's motion for nonsuit and hearing the testimony of defendant reverse its former ruling and sustain the motion before submission of the case to the jury.

---

[1]   Schools and School Districts, 35 Cyc., p. 925, n. 20.
[2]   Schools and School Districts, 35 Cyc., p. 923, n. 5.
[5, 6]   Trial, 38 Cyc., p. 1560, n. 52, p. 1562, n. 55.

*Appeal from District Court, Cascade County; W. H. Meigs, Judge.*

---

5.   See 9 Cal. Jur. 564.

ACTION by School District No. 42 of Cascade County against Wencel Pribyl. Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. W. P. Costello,* for Appellant, submitted a brief and argued the cause orally.

*Mr. W. F. O'Leary,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In September, 1927, plaintiff commenced action against defendant for damages for the alleged wrongful destruction and removal from a school site of property belonging to the district. By answer defendant admitted the commission of the acts complained of, but denied any wrongdoing, and, as an affirmative defense, alleged that the site had theretofore reverted to him under the provisions of the deed by which he conveyed it to the district, and that the property in question was attached to the soil as a part of the realty. He claimed the property as his own. The allegations of the answer were denied by reply. A trial was had to the court and jury, and, at the close of plaintiff's case, defendant moved for a judgment of nonsuit, which motion was denied by the court on ground which will be hereafter stated. Defendant then introduced his proof, and, both sides having rested, the court, in the absence of any motion therefor at that time made, ordered the dismissal of the action. Thereafter judgment was entered reciting that it was made on the sustaining of defendant's motion for nonsuit. Plaintiff moved for a new trial, which motion was denied, and thereafter appealed from the judgment; its specifications of error will succinctly appear from our discussion of the questions raised in argument thereof.

The undisputed facts are as follows: In 1902 defendant deeded one acre of his ranch to the district as a site for a

schoolhouse, and in the deed provided that: "This conveyance
is upon the express condition that the land  *   *   *  will be
used as a site for a schoolhouse  *   *   *  and is to remain in
effect only as long as said land is so used, and in the event
it is used for any other purpose  *   *   *  the title to this
land will revert to the party of the first part upon payment by
him  *   *   *  of the sum of $1.00 to the parties of the second
part or their successors in office, together with all the tene-
ments, hereditaments and appurtenances thereunto belong-
ing.  *   *   *  "

The district erected on the site a small stone schoolhouse, with
a frame "lean-to" and other small outbuildings, and sur-
rounded by a fence of cedar posts set in the ground and strung
with barbed wire. When completed, school was opened in the
schoolhouse and there continued up to June, 1923.

In November, 1923, a special election was held in the dis-
trict for the purposes of "choosing a school site" and determin-
ing whether the surplus funds of the district should be used
toward the erection of a schoolhouse. As a result of the elec-
tion, "Boston Coulee was accepted as the school site for the
district," and the funds were voted for the purpose mentioned.
No mention is made in the proceedings had of the original
site and schoolhouse; the district proceeded as though originally
selecting a site and preparing to open and conduct school in
the district.

On completion of the new schoolhouse, "the school was
moved to Boston Coulee," and all movable property of the dis-
trict, including the outbuildings, was transferred to the new
site. School has been there conducted continuously since that
time. Immediately after the removal of the school, defendant
re-entered, took possession of the old site, and placed a lock
on the gate to the inclosure, and thereafter the officers of the
district neither exercised nor attempted to exercise dominion
or control over the Pribyl site or the building and fence stand-
ing thereon. Defendant has at all times paid taxes on the
land in question.

[82 Mont. 295.]

Early in 1927 defendant had a deed of reconveyance drawn, and presented it to the school trustees, and paid to them the sum of $1 as required by his deed to the district. The trustees retained the dollar and executed the deed, but failed to deliver it to defendant; instead they called a special election for the sole purpose of securing a vote of the electors on the question of reconveying the land to defendant. But six electors voted, and each voted "No." Some heat seemed to have been engendered; rumors of threats to dynamite the stone building reached defendant, who posted a "no trespass" sign and gave out that he would back it up with a gun if necessary. Thereafter parties unknown piled hay on the floor of the building, poured oil on it and set fire thereto. This fire burned a large hole through the floor and injured the wooden ceiling before the fire was discovered and extinguished by defendant and his wife.

According to the defendant's testimony, the building had been standing open and the fence was partly down so that cattle roamed about the premises and entered the building, and, after the fire, not only the fence wire, but the damaged floor, constituted a menace to his stock, and, to remove the danger, defendant took up the floor and rolled up the wire; he also removed the ceiling which he stated had become loosened. This material he stored near his farm buildings. Defendant moved the "lean-to" from the stone building to the vicinity of his barn, and used it as a cattle shed, using the old schoolhouse for that purpose also. These are the acts of which plaintiff complains, and counsel for plaintiff frankly concedes that, if the site and the building and fence had theretofore reverted to defendant, plaintiff had no cause of action.

All of the above facts sufficiently appear from plaintiff's proof, as it made defendant its witness and brought out his position in the matter.

1. As ground for overruling defendant's motion for judgment [1] of nonsuit, the court stated that the evidence discloses that, at the time of moving the school, the trustees locked the

300     School Dist. No. 42 v. Pribyl.     [Mar. T. '28

[82 Mont. 295.]

building and locked the gate to the inclosure, which is some evidence that there was no abandonment of the site for school purposes, and therefore the question of abandonment was one for the jury. The record, however, does not bear out this statement by the court; there is no testimony as to locking the schoolhouse, and the only evidence as to the locking of the gate is as stated above. It was locked by the defendant, and it is now conceded there is no substantial conflict in the evidence.

It is significant that no witness for plaintiff testified, or even intimated, that the district ever had any intention of using the land in question as a school site after the "school was moved" to Boston Coulee, and the evidence is clearly sufficient to warrant a finding, in support of the judgment, to the effect that the district intended in 1923 to permanently change the site of the schoolhouse in the district and never again use the land in question for that purpose.

The plaintiff therefore abandoned the Pribyl land as a school site in 1923, and it then reverted to defendant under the terms of his deed to the district (*Waddell* v. *School District,* 79 Mont. 432, 257 Pac. 278) on his payment to the district of the $1 required by that instrument.

2. Counsel for plaintiff, however, contends that defendant may not maintain his defense, as it constituted a collateral attack upon the deed, citing authorities. There is no merit in this contention, as defendant merely asserts his title under the terms of his deed to the district; he claims under the terms of the deed, not contrary thereto.

3. Counsel urges that there was no breach of the condition [2] subsequent contained in the deed, as the reference is to the "school site" which is defined by Webster as "the place where anything is," and that, so long as the old schoolhouse remained on the land, that land remained a "school site." This is but specious argument. The provision of the deed is "this conveyance is to remain in effect only as long as said land is so used"; i. e., is *used* as a "site for a schoolhouse."

Referring to counsel's own authority, Webster also says that a schoolhouse is ''a building which is appropriated for the use of a school or schools, or a place in which to give instruction.'' Any sort of a building may be a ''schoolhouse'' under this definition, but, when it is abandoned for the use for which it was appropriated, it ceases to be a ''schoolhouse''; but, even though we concede that by reason of the building remaining on the land, it continued to be a site for a schoolhouse, the contingency on which the land reverted arose when the district ceased to ''use'' the land as a site.

4. Counsel cites *Smith* v. *Hoffman,* 56 Mont. 299, 316, 184 Pac. 842, to the effect that ''a mere breach of condition will not revest an estate in a grantor,'' but the court was there dealing with facts not at all similar to those in the instant case. Here we are dealing with a deed which specifically provides that the title shall revert to the grantor on the happening of the event specified, and, although defendant may be compelled to resort to an action to enforce the provisions of section 9479, Revised Codes 1921, or to quiet title to his land, he is the owner thereof (*Waddell* v. *School District,* above), and mere paper title will not support an action such as this against the true owner of the land.

5. Counsel next raises the point that, although under the [3] provisions of section 6669, Revised Codes 1921, fixtures attached to realty become real property, the statute is not controlling, and whether or not the property in question became a part of the real estate depends upon the intention of the parties, and the adaptability of the property to use in connection with the real estate is largely controlling, citing *Mattison* v. *Connerly,* 46 Mont. 103, 126 Pac. 851, and *Montana Electric Co.* v. *Northern Valley Min. Co.,* 51 Mont. 266, 153 Pac. 1017, and that, under the law of the state authorizing school trustees to build and remove schoolhouses, the intention of the parties that the schoolhouse remain personal property must be presumed.

Here, however, we have first the disputable presumption that the building and the fence became a part of the real property

(*Mattison* v. *Connerly* and *Montana Electric Co.* v. *Northern Valley Min. Co.*, above), with no evidence of a contrary intention on the part of the plaintiff; indeed, the intention of the parties as expressed in the deed is that, on a reversion of the land, the fence and building should also revert to the defendant, as the clause above quoted expressly declares, "together with all tenements, hereditaments and appurtenances thereunto belonging," and the building necessarily passed to the defendant with the land. (*Hauf* v. *School District*, 52 Mont. 395, 158 Pac. 315.)

6. Counsel for plaintiff urges that the judgment is fatally [4] defective, in that it contains "a finding in equity to the effect that the defendant is entitled to a reconveyance of the property." The so-called finding is in conformity with the fact and the law, and was a necessary conclusion to be reached before the court could enter the judgment of dismissal. It was not necessary that it be contained in the judgment, but it has not the effect of compelling a reconveyance, and cannot affect the validity of the only judgment entered; i. e., a judgment of dismissal of the action brought.

7. Finally error is assigned upon the entry of a judgment [5, 6] of dismissal on the court's own motion, as an arbitrary abuse of the power of the court. This is hardly a correct statement of the disposition of the action. The judgment recites that it was entered upon the sustaining of defendant's motion for judgment of nonsuit.

Section 9317, Revised Codes 1921, provides that an action may be dismissed or a judgment of nonsuit entered: "5. By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for the jury." The defendant made timely motion for judgment of nonsuit. By plaintiff's own proof it appeared at that time that title to the property involved was in defendant, and plaintiff could not have prevailed upon any theory. Had the case been finally submitted to the jury and a verdict returned in favor of plaintiff, it would have been the duty of the court to grant defend-

ant a new trial or of this court to reverse it on appeal; this being so, the court should have granted the motion. (*Howie* v. *California Brewery Co.*, 35 Mont. 264, 88 Pac. 1007; *Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *Flynn* v. *Poindexter & Orr Live Stock Co.*, 63 Mont. 337, 207 Pac. 341.)

The motion was not waived by the introduction of testimony by defendant; he only assumed the risk of supplying the defects in plaintiff's proof (*Cain* v. *Gold Mt. Min. Co.*, 27 Mont. 529, 71 Pac. 1004), and his testimony in nowise aided the plaintiff.

The motion having been properly interposed and erroneously overruled by the court and being not waived thereafter, we see no reason why, on discovery of its mistake, the court should not, before time for submission to the jury, reverse its former ruling and sustain the motion for nonsuit, as the court in effect did, and thus save the trouble and expense of a submission to the jury, with the possibility that the court would thereafter be required to set aside any verdict rendered and grant defendant a new trial. In *Couch* v. *Charlotte, C. & A. Ry. Co.*, 22 S. C. 557, a like situation was met by a like contention, and the court there said it did not see "that it was beyond the discretion of the judge during the trial of the cause, and while the facts were unchanged, to correct his own rulings and grant a nonsuit which he had before refused."

Counsel complains that, no motion being made for dismissal at the close of all of the evidence, he did not have an opportunity to oppose the dismissal; but that opportutnity was afforded him at the time the motion for judgment of nonsuit was made, and nothing thereafter arose to change the situation of the parties, and no injustice was done plaintiff by the later action of the court. He was in no different situation than he would have been had the court originally sustained the motion, or, having overruled the motion, discovered the error immediately and reversed the ruling.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.

Rehearing denied May 25, 1928.